IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM A. MACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 06-1144 (PLF) |
| ) | |
| WP COMPANY, L.L.C., d/b/a ) | Jury Trial Demanded |
| THE WASHINGTON POST ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DECLARATION OF GARY CORSO**

I, Gary Corso, declare as follows:

1.  I am over 18 years of age.

2.  I make this declaration based upon personal knowledge. If called to testify, I could testify competently to the facts in this declaration.

3.  I have been employed at The Washington Post ("The Post") since September 2002, and have been the Director of Administration and Operating Services since March 2006. It is in this capacity that I am familiar with the facts set forth herein.

4.  My duties as the Director of Administration and Operating Services include overall management of The Post's Security Department at its facilities in Washington, DC; College Park, Maryland; and Springfield, Virginia. When I accepted this position, The Post employed seven full-time employees in the Springfield Security Department, including both Security Supervisors and Security Guards. The Post supplemented its regular security force at Springfield with approximately six part-time on-call Security Guards and twelve Security Guards provided by an outside contractor, Guardsmark. The part-time on-call Security Guards were responsible for filling in for regular Security Guards who were absent or otherwise unavailable to

work, and for working shifts that The Post could not cover through its full-time employees and the Guardsmark contractors. Thus, consistent and regular attendance was a crucial part of the job.

5.  I met with then-Security Manager, Ulysses S. Smith, shortly after I assumed overall responsibility for the Security Department. Smith gave me an overview of the Security Department, and also identified employees who had performance issues.

6.  Smith identified William Mack, a part-time on-call Security Guard, as the most problematic employee. Smith told me Mack had a habit of last minute absences for personal reasons, that he had a few problems with other employees, and that he had previously been disciplined for falsifying documents. I was concerned about all of these issues, but I was particularly concerned about the absenteeism issue, as Smith suggested that Mack's attendance had not shown any improvement over time.

7.  Shortly after I assumed responsibility for the Security Department, I began to reevaluate The Post's use of its own employees to fulfill the security function, and to consider reducing The Post's security force in favor of the independent contractors supplied by Guardsmark. I decided that the first step in this process was to reduce the number of hours worked by the part-time on-call Security Guards.

8.  Based on Smith's description of Mack's attendance record, as well as the fact that I already planned to reduce the number of hours the part-time on-call security guards were working, I decided to remove Mack from The Post's part-time on-call roster.

9.  Shortly thereafter, I informed Smith that The Post was removing Mack from the part-time on-call roster due to his poor attendance, and asked him to notify Mack. I also sent a letter to Mack indicating that The Post intended to remove him from the part-time on-call roster

because he was unavailable when called for eighteen shifts between January 2005 and May 2006. I have since learned that Mack had more than eighteen absences during this period.

10. When I made the decision to remove Mack from the part-time on-call roster, I was unaware of any claim by Mack that a few of his absences were covered by the Family and Medical Leave Act. However, given the nature of many of Mack's other absences, which involved repeated personal issues with his home and car, I still would have removed Mack from the on-call register even if these absences had not occurred. In fact, Mack's 2006 attendance record was sufficient for me to conclude that he should be removed from the roster.

11. On July 10, 2006, approximately two months after Mack was terminated, I met with the remaining part-time on-call Security Guards and informed them that The Post planned to reduce their hours to a maximum of sixteen hours per week, effective September 1, 2006.

12. Effective May 1, 2007, The Post stopped staffing any security shifts at any of its facilities with part-time on-call Security Guard positions.

I have read the foregoing Declaration and declare under penalty of perjury that it is true and correct.

Executed this sixth day of June 2007.

_____
Gary Corso