IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

WILLIAM A. MACK                    )
                                   )
        Plaintiff,                 )
v.                                 )        CA 06-1144 (PLF)
                                   )
WP COMPANY LLC, INC., dba          )
THE WASHINGTON POST                )
                                   )
        Defendant.                 )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.   Introduction

This case arises under the Family and Medical Leave Act 29 U.S.C. §2601 et seq. Summary Judgment is inappropriate because there are material facts in dispute.

### II.  Relevant Facts

William Mack was employed by the Washington Post beginning in 1993 as a security officer at its printing plant in Springfield, Virginia. Mack was considered a good employee during his employment. In about 2001 Mack was diagnosed with sarcoidosis, a disease that has many side effects and requires continuing treatment including injections of steroids. Mack's doctors treated the disease with various creams and injections of steroids. After the diagnosis of sarcoidosis Mack missed work intermittently because of the injections of steroids.

Mack testified at deposition that his disease, sarcoidosis, manifests itself in various ways including tiredness, stiffness, inability to walk, hypertension, muscle spasms, swelling of face and breathing difficulty (Exhibit 1 at 13-15). Sarcoidosis is a

little known disease that affects individuals differently (Exhibit 6). Mack failed the OSHA breathing test at the Post in 2004 (Exhibit 6 at bates 624). The Post's medical records show that Mack brought doctor's notes indicating that he was suffering from sarcoidosis and required regular injections and the handwritten notes show the medical forms returned to supervisors. (Exhibit 4 at bates 608, 614, and 637 (medical note of Post nurse dated 7/10/02 states "sarcoidosis - gets steroid inj (shot) Q 3 mos for this - lesions wax/wane").

Mack told his supervisor, Smith, about his disease and the need for injections (Mack deposition, Exhibit 1  at 287-88, 323, 330). (Smith deposition, Exhibit 2 at 38). Donald Jackson was also told of the sarcoidosis (Mack Deposition at 290-91). Mack told various officials of the post about his disease, and that Smith was harassing him for taking sick time (Mack at 92-94, 95-96). Mack told Gary Corso, Director of Security and Administration at the Post, that he had the disease sarcoidosis on April 3 and April 25, 2006, that he needed time off for injections and that Smith was harassing him for taking medical leave (Mack at 96, 101-04); Corso fired Mack by letter dated May 8, 2006, less than a month after Corso was told about the harassing conduct of Smith and Mack's need for time off for medical care. (Exhibit 2, deposition of Smith at deposition Exhibit 9). When Mack spoke to Corso in April 2006, he asked Corso to speak to Smith about the harassment (Id. at 101-02). When Mack spoke to Corso about being terminated, Corso told Mack he was terminated for taking 18 days off for sickness (Exhibit 1 at 324). Corso's letter of May 8, 2006 to Mack

referenced 18 absences, the exact number of sick days shown on the print out of the Post (Smith deposition exhibits nos. 9 and 11).

After being diagnosed with sarcoidosis in 2001, Mack received steroid shots for the disease every two months (Mack deposition at 16, 162). Of all the sick leave taken by Mack since being diagnosed with sarcoidosis, only about two absences were not related to the effects of sarcoidosis (Mack deposition at 41-42). Mack was not allowed time off for his illness unless he presented a doctor's slip (Id at 276). Mack asked Smith for time off for physical therapy for his leg stiffness but Smith denied this because Mack did not have a doctors slip (Id at 275). When Mack had appointments with his dermatologist, it was up to the doctor to decide if Mack would receive a steroid injection and Mack never knew beforehand what the doctor would decide (Id at 210-12).

The Post's health department received various medical records from Mack indicating he had sarcoidosis (Exhibit 4 at bates 608, 637). The Post's medical records show that was required to bring the Post a medical report each time he took sick leave. Mack also spoke to the nursing staff at the Post about his sarcoidosis (Mack deposition at 77, 141, 298). Mack was rushed from the Post to the Hospital because of high blood pressure (Id at 36). The doctor diagnosed Mack's high blood pressure as a side effect of the steroid shots Mack received for sarcoidosis (Id at 39). One of the Nurses at the Post gave Mack cream for the sarcoidosis (Id at 60).

Other employees at the Post were criticized for using sick leave by supervisors including King, Carr, McGruder (Smith deposition at 93, Mack deposition at 328, Jackson at 48-50).

During the period January 1, 2005 to May 2006 where Mack had 18 absences for sickness and was terminated, McGruder was out about 30 days (Mack deposition at 140, Exhibit 5 (pass on log showing when McGruder called off), Smith deposition at 97). McGruder had almost as many individual sick days as Mack (Exhibit 5) and had several weeks off sick for operations (Smith deposition at 97). After Mack was terminated for sick day usage, Mcgruder was warned it would not be a good time to take off for illness (Mack at 304). None of McGruder's time off for operations was classified as time off for FMLA since Smith testified that no one in his department had ever used FMLA. (Smith at 32). Smith and Jackson thought that the Post had forms for using FMLA but neither had seen such a form (Smith at 34, Jackson at 38). Neither Smith or Jackson was familiar with the term "intermittent leave" (Smith at 100, Jackson at 39). Jackson did not know if employees were told of FMLA (Jackson deposition at 39). Jackson knew that Mack had high blood pressure which is a serious medical condition itself (Jackson at 30).

Mack only learned about the availability of FMLA when he was told be a nurse at the Post (Mack at 141, 326-27). Mack testified that Smith never asked him to tell Smith about medical appointments beforehand (Id at 326). While Smith denies knowing about Mack's sarcoidosis, he testified that Mack told him about the "injections" (Smith at 38). The supervisors would see the medical records brought in by employees including Mack (Jackson at 27-28, Exhibit 4 shows the medical reports being returned to the supervisors).

Because the steroid shots made Mack tired and he had muscle

soreness, he requested that he be allowed to work light duty at times. This light duty was denied by Smith (Mack deposition at 32, 324-26, 330) although other employees were allowed light duty (Smith deposition at 97 and Mack at 215, 217). Smith testified that Mack never requested light duty (Id at 41). Mack was never offered FMLA leave for time off or any light duty (Mack at 273-74, 324-325). Mack was told repeatedly by Smith that he was abusing his sick leave (Mack at 82, 244, 246, 252-53). Smith indicated on Mack's performance evaluation that he was using too much sick leave (Smith at 55 and Smith deposition exhibit No. 13). Smith also provided Mack with a print out showing his use of 18 days of sick leave (Smith at 52, and deposition exhibit 11) and brought to Mack's attention his use of sick leave 4 or 5 times (Smith at 50-51). Smith testified that he would read Mack's doctors' notes when he was ill (Smith at 78-79). Smith testified that he did not tell Corso that Mack was not available for 18 shifts (Id at 83). Smith testified that long term vacation was not considered a call off (Id at 84).

### III.  <u>Argument</u>

**A.  Legal Standard**

Pursuant to Fed. R. Civ. P. 56(c), defendant may obtain summary judgment in its favor only if it demonstrates that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law.

Summary judgment is appropriate only where the record as a whole could not lead a rational trier of fact to find for the non-

moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (U.S. 1986). The burden of making such a showing is on the party moving for summary judgment. McKinney v. Dole, 765 F.2d 1129, 1134-1135 (D.C. Cir. 1985). In making its determination, the Court must view all inferences to be drawn from the facts in the light most favorable to the party opposing the motion, in this case the plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (U.S. 1986).

In addition, "the record must show the movant's right to [summary judgment] with such clarity as to leave no room for controversy," and must demonstrate that the opposing party "would not be entitled to [prevail] under any discernible circumstances." McKinney v. Dole, 765 F.2d at 1135 (citing Williams v. W.M.A.T.A., 721 F.2d at 1415).

"As a general proposition, summary judgment is likely to be inappropriate when issues of motive, intent and other subjective feelings and reactions are material." Glekas v. Ross & Phelps Inc., 437 A.2d 584, 587 (D.C. 1981), citing, 6 Moore's Federal Practice, Sec.56.17 (41.1) at 56-930 (1980). Since discrimination and reprisal claims usually involve conflicting evidence of motivation, summary judgment is not commonly granted such cases. See McKenzie v. Sawyer, 684 F.2d 62, 67 (D.C. Cir. 1982); Stoller v. Marsh, 682 F.2d 971, 981 (D.C. Cir. 1982).

A plaintiff in a Family and Medical Leave Act case may rely on either an "interference or entitlement" theory or a "retaliation or discrimination" theory. (See Strickland v. Waterworks and Sewer Bd., 239 F.3d 1999, (11th Cir. 2001) and Smith v. Diffee Ford-

Lincoln Mercury Inc., 298 F.3d 955 (10th Cir. 2002)).  Courts have recognized that the Family and Medical Leave Act is remedial legislation.

As noted above, a plaintiff in a Family and Medical Act case can rely in an "interference theory" or a "retaliation or discrimination theory".  Even if in this case, as in most employment discrimination cases, there is little or no direct evidence of discrimination, there is sufficient evidence for a jury to find discrimination.  The Court in Hodgens v. General Dynamics, 144 F.3d 151, 160 (1st Cir. 1998) noted that in evaluating what is largely circumstantial discriminatory evidence, courts are generally bound by the standard established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).  That framework permits triers of fact to infer intentional discrimination by determining whether the employer's stated reasons for the challenged employment action are a pretext for discrimination.  Burdine, 450 U.S. at 253, 256.

In McDonnell Douglas and Burdine, the Court created a sensible, orderly and just framework for proving intentional discrimination based on circumstantial evidence.  That framework provides that once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action in question.  This burden is not heavy -- it merely requires the employer to articulate its actual reason or reasons for its decision.  If the employer satisfies this burden, then the employee is provided with a "full

and fair opportunity" to demonstrate that the employer's rationale is pretextual, i.e., that it was not the actual motivating reason(s).

If the employee proves pretext, then a finding of liability is permitted because the employer's theory has been defeated or disproved, leaving discrimination as a proper inference for the underlying motivation. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993).

Requiring a plaintiff to do more than prove pretext in order to prevail would effectively require the employee to proffer direct evidence of discrimination.

Once the defendant articulates its legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the reason is pretext. Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1423 (D.C. Cir. 1988). Where the plaintiff presents evidence from which a jury could reasonably conclude that the articulation is not the reason for the adverse action, the plaintiff defeats summary judgment. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993). In Hicks, Justice Scalia, writing for the Court, stated:

> [t]he factfinder's disbelief of the reasons put
> forward by the defendant (particularly if disbelief
> is accompanied by a suspicion of mendacity) may,
> together with the elements of a prima facie case,
> suffice to show intentional discrimination.

Id. at 2749.

Pretext can be shown in various ways. For instance, the Seventh Circuit, in a helpful formulation, stated that a plaintiff can avoid summary judgment by showing any of the following: (1)

that the defendant's proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate [her] discharge; or (3) that [the reasons] were insufficient to motivate the discharge. <u>Collier v. Budd Co.</u>, 66 F.3d 886, 890 (7th Cir. 1995).

There are substantial conflicts among the testimony of the parties in this case. Courts have noted that the credibility of a witness is a factual issue which precludes summary judgment. See <u>United States v. United Marketing Ass'n.</u>, 291 F.2d 851 (8th Cir. 1961) which stated at 853:

> It is, of course, academic that a motion for summary judgment should never be granted if there remains in the case a genuine issue of material fact. Credibility of the witnesses or the parties may well be such a genuine issue.

The United States Court of Appeals for the District of Columbia in <u>Tavoulareas v. Piro</u>, 759 F.2d 90, 104 (1985) stated as to intent and credibility:

> It is not that summary disposition is disfavored when the issue is the mental state of the defendant; rather, the very nature of the inquiry is frequently so bound up with the weighing of credibility that courts, as a practical matter, will only infrequently find the facts regarding mental state so crystal-clear that a reasonable jury could reach only one conclusion.

B. **Mack's Inference Claim Does Not Warrant Summary Judgment**

The Post cites <u>Walton v. Ford Motor Co.</u>, 424 F.3d 481, 485 (6th Cir. 2006) as setting forth the standards for establishing an inference claim. The Post fails to note that the <u>Walton</u> Court noted the employee need not expressly assert rights under FMLA or even mention FMLA, only give the employer enough information for the employer to reasonably conclude that an event described on the

FMLA has occurred, <u>Walton</u> at 486 citing <u>Hammon v. DHL</u>, 165 F.3d 441, 451 (6th Cir. 1999). Here it is undisputed that Mack gave the Post's health department medical notes about his sarcoidosis and the health Department's own notes state that Mack would receive steroid injections on a regular basis. Further, Mack's supervisor Smith testified at deposition that he knew Mack was receiving injections.

The Post does not cite the parts of the <u>Walton</u> decision where the Court notes that the employer issued multiple notices to the employees that informed the employees about how to obtain FMLA leave. (Id. at 484). The Post also fails to note that the <u>Walton</u> case employee was told to give notice and complete FMLA forms (Id. at 485). Walton at 487 notes that 29 CFR 825.303(b) requires that an employer is expected to obtain any additional required information through informal means.

Here, the Post had actual notice for a number of years about Mack's serious medical condition, sarcoidosis. The Post did nothing to ensure that it complied with the FMLA. There is no evidence that the Post has FMLA forms other than the statement of Smith that he believes the Post has forms but has never seen them. The Post certainly has not met its burden to keep FMLA records for a 3 year period under 29 CFR 825.500 since it has never created any records pertaining to the act. Mack's supervisors, Smith and Jackson were unfamiliar with the term "intermittent leave" and Jackson was unsure whether an employee could take FMLA leave more than once a year. In <u>Walton</u> the employee had prior FMLA leave where he provided notice (Walton at 484). Here, Mack was only told

directly about FMLA by the Post's nurse who informed him in 2006 that the Post was violating the FMLA.

The Walton Court cites Cavin v. Honda of Am. Mfg. Inc., 346 F.3d 713, 721 (6th Cir. 2003) concerning the notice required to be provided and notes that 29 C.F.R. 825.302(d) allows "an employer may also request the employee to comply with the employer's usual and customary procedural requirements for requesting leave." This is exactly what the Post requested of Mack and Mack followed this procedure. The Post is now suggesting that Mack did not provide sufficient notice when the Post failed entirely to meet the requirements of the FMLA. As far as can be determined, the Post has no internal procedures or forms for an employee to use who requires FMLA.

Courts recognize that an employer's failure to advise an employee of his FMLA rights may constitute interference with such rights. The Court in Reifer v. Colonial Intermediate Unit 20, 462 F.Supp.2d 621, 637 (M.D.Pa. 2006) stated: "Interference with an employee's rights includes an employer's failure to advise the employee of her rights under FMLA." The Court, citing 29 CFR 825.301(b)(1), noted that the employer must provide the employee with "written notice detailing specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." Further, the employer has the responsibility to designate leave as FMLA qualifying and to give notice of the designation to the employee pursuant to 29 CFR 825.208. (Id.). Mack was never told whether any of his leave qualified for FMLA or his rights and responsibilities as to

intermittent leave.

Mack's testimony is clear that Smith continued to harass him and mark him down on his employment evaluation because of his use of sick leave for sarcoidosis.  Smith denied Mack light duty after his injections according to Mack's testimony while allowing other employees light duty.  Smith refused to allow mack time off for physical therapy for muscle pain according to Mack's testimony.  29 CFR 825.220(b) holds that "interfering with the exercise of rights under the FMLA includes discouraging an employee from using sick leave."

The Court on <u>Welty v. Honda of America Mfg. Inc.</u>, 411 F.Supp.2d 824, 829 (S.D.Ohio 2005) stated: "Inherent within the exercise of right to leave under FMLA is that the employer cannot later use that leave against the employee.  By doing so the employer interferes with the ongoing protections that are part prescriptive in that ... an employer cannot penalize an employee for invoking this or other FMLA rights."

C.  **Summary Judgment is not Warranted on Retaliation Claim**

The Post argues that Mack's retaliation claim is subject to summary judgment.  The Post now argues that it was the totality of Mack's absences which caused his termination (Memo at 26).  The Post ignores Corso's letter of May 8, 2006 stating that Mack was terminated for 18 days of leave.  The Post also ignores the fact that Mack's attendance log has exactly 18 days of sick leave taken for the exact period referenced in Corso's May 8, 2006 letter. Most important, the Post ignores Mack's deposition testimony that on April 3, 2006 and April 25, 2006 he spoke with Corso telling

Corso about his sarcoidosis and telling Corso that Smith was harassing him for taking sick leave for his sarcoidosis.

Corso terminated Mack about two weeks after Mack complained about his treatment by Smith concerning his sarcoidosis referring directly to Mack's use of 18 days of sick leave. When Mack spoke to Corso, he was told that he was terminated for taking too much sick leave.

Courts have ruled that proximity in time is enough to create a genuine issue of fact concerning retaliation, <u>Brungart v. Bellsouth Telecommunications, Inc.</u>, 231 F.3d 791, 799 (11th Cir. 2000). The Court in <u>Sabbrese v. Lowes</u>, 320 F.Supp.2d 311 (W.D.Pa. 2004) held that a two week period of time was sufficient to create an inference of retaliation.

Mack was also retaliated against by the Post when he sought light duty after having steroid injections but was denied such light duty by Smith. Other employees were allowed light duty. Similarly, Smith graded Mack low on his employee evaluation for attendance because of Mack's use of sick leave. Thus, there is a pattern of the Post retaliating against Mack for use of sick leave for his sarcoidosis.

In this case the Post has retaliated against Mack for both using sick leave protected by the FMLA and opposing Smith's harassment when he spoke to Corso leading to Mack's termination. See, <u>Reifer</u>, 462 F.Supp.2d at 638.

D. **Mack's Damages Are Substantial**

The Post argues that Mack's damages are insubstantial. To reach this conclusion the Post assumes that Mack was only working

part time for the Post prior to his termination and worked full time at his other job after his termination.  Only the second half of the Post assumption is true.  Prior to being terminated by the Post Mack was working at both jobs more than half time each and earning about $16.00 at the Post with benefits and about $13.00 per hour at the second job without medical benefits.  After his termination. Mack lost the family medical benefits at the Post and was able after a period of time to obtain health insurance for himself.  In terms of income, Mack is earning over $10,000 per year less than he earned when working both jobs.  The Post's suggestion that Mack has failed to seek a higher paying job ignores the realities of life.  Mack testified at deposition that the new job allows him to sit when his sarcoidosis is causing muscle pain. Further, the realities of modern employment usually bring a period of lack of health insurance or lack of coverage for preexisting illnesses when a new job is begun.  No one with Mack's medical condition can afford to be without health insurance.

### REQUEST FOR ORAL HEARING

Plaintiff hereby request the opportunity for an oral hearing concerning this matter based on the factual complexity and legal questions presented.

### Conclusion

For the above stated reasons, the Court is requested to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,


William A. Mack
By Counsel


_____ -s- _____
Nils G. Peterson
D.C. Bar No. 295261
2009 N. 14th Street, Suite 708
Arlington, VA  22201



Certificate of Service

    I hereby certify that on the 21st of June, 2007 I served
Defendant with a copy of the foregoing by electronic filing.
Notice of this filing will be sent to all parties by operation of
the Court's electronic filing system.

            _____ -s- _____
                 Nils G. Peterson