**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIAM A. MACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-1144 (PLF) |
| | ) | |
| WP COMPANY, L.L.C., d/b/a , | ) | Jury Trial Demanded |
| THE WASHINGTON POST | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY MEMORANDUM**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Jacqueline M. Holmes
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
(202) 879-3939 (telephone)
(202) 626-1700 (telecopy)

Attorneys for Defendant
The Washington Post

# TABLE OF CONTENTS

I.      INTRODUCTION .............................................................................................. 1

II.     ARGUMENT .................................................................................................... 1

        A.      The Post is Entitled to Summary Judgment on Mack's FMLA Interference
                Claim ................................................................................................. 1

                1.      Mack Failed to Give The Post Adequate Notice of His Need For
                        Leave ........................................................................................ 2

                2.      Mack Failed to Satisfy the Requirements for Intermittent Leave ............. 5

                3.      The Post Did Not Interfere With Mack's FMLA Rights .......................... 6

        B.      The Post is Entitled to Summary Judgment on Mack's FMLA Retaliation
                Claim ................................................................................................. 8

                1.      Mack Has Failed to Make Out a Prima Facie Case of Retaliation ........... 9

                2.      Mack Does Not Dispute The Post's Legitimate Business Reason
                        for Its  Actions ........................................................................... 11

                3.      Mack Has Failed to Establish Pretext ..................................................... 11

        C.      Mack Concedes that He Is Not Entitled to Reinstatement, but Only to
                Minimal  Damages ............................................................................. 13

III.    CONCLUSION................................................................................................ 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bailey v. Amsted Industrial, Inc.*, 172 F.3d 1041 (8th Cir. 1999)................................................2, 8

*Bohman v. County of Woods*, 2004 WL 1563209 (W.D. Wis.)....................................................12

*Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791 (11th Cir. 2000).........................9

*Callison v. City of Philadelphia*, 430 F.3d 117 (3rd Cir. 2005) ....................................................10

*Gilmour v. Abbott Laboratories*, 2005 WL 947082 (N.D. Ill. Apr. 11, 2005) .............................12

*Johnson v. Houston's Restaurant, Inc.*, 167 Fed. Appx. 393 (5th Cir.  2006) ........................6, 7, 9

*O'Reilly v. Consolidated Edison Co.*, 374 F. Supp. 2d 278 (E.D.N.Y. 2005) ..............................12

*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000) .................................................12

*Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621 (M.D. Pa. 2006)............................3

*Throneberry v. McGehee Desha County Hospital*, 403 F.3d 972 (8th Cir. 2005)...........................8

*Wascura v. City of South Miami*, 257 F.3d 1238 (11th Cir. 2001) ...............................................10

## FEDERAL STATUTES AND REGULATIONS

29 C.F.R. § 825.214(b) .............................................................................................................6, 9

29 C.F.R. §825.220(a)................................................................................................................10

29 C.F.R. § 825.220(b) ................................................................................................................7

## I.  INTRODUCTION

In its Memorandum in Support of Motion for Summary Judgment ("Mem."), Defendant The Washington Post ("The Post") established, primarily through Plaintiff William Mack's ("Mack") own admissions, that it is entitled to summary judgment on his claims that The Post violated the Family and Medical Leave Act when it terminated his employment for poor attendance.  Simply put, Mack's admissions that (1) he had notice of The Post's FMLA policy; (2) he never sought FMLA leave; (3) he failed to provide The Post with adequate notice of his foreseeable absences; (4) most of his absences were unrelated to his alleged serious health condition; and (5) he made no effort whatsoever to schedule his leave for a time when it would least disrupt The Post's operations (Mem. at 1) completely defeat his FMLA interference and retaliation claims.

Because he cannot overcome these key admissions, Mack instead ignored them in his Opposition to The Post's Motion for Summary Judgment ("Opp.").  He also completely ignored certain of The Post's legal points that are, by themselves, sufficient to grant summary judgment. And when Mack did respond to The Post's arguments, he repeatedly misrepresented the record evidence and misquoted the applicable legal standards in the hope of surviving summary judgment.  In the end, however, none of his obfuscations change his own admissions, or the clear summary judgment record in this case.  That record, and the applicable legal standards, require that judgment be entered in The Post's favor as a matter of law.

## II.  ARGUMENT

### A.  The Post is Entitled to Summary Judgment on Mack's FMLA Interference Claim

In its Motion, The Post established that it is entitled to judgment on Mack's FMLA interference claim for three independent reasons: *first*, because Mack admittedly failed to satisfy

the FMLA's notice requirements (Mem. at 14-19); *second*, because Mack admittedly failed to satisfy the requirements for intermittent leave under the FMLA (Mem. at 19-20); and *third*, because Mack admits that the vast majority of his absences were unrelated to his serious health condition, thus, The Post would have terminated his employment for poor attendance even without consideration of those absences.  Mem. at 20-23.  Mack's responses to the first two points completely misrepresent the record and the applicable legal standards; he has no response whatsoever to the third point.  His FMLA interference claim should therefore be dismissed.

       1.  <u>Mack Failed to Give The Post Adequate Notice of His Need For Leave</u>

Mack claims that The Post had adequate notice of his need for FMLA leave because his supervisor Smith and The Post's health center had general knowledge that he had a "little known" (Opp. at 2) skin disease called sarcoidosis, and that he sometimes received injections to treat the disease.  Opp. at 10.  As The Post established in its Motion (Mem. at 14-19), this "notice" was insufficient as a matter of law to show that Mack required leave at any particular time, or for any specific reason.  It is not enough under the FMLA for an employer to have "knowledge that [the employee] ha[s] serious medical conditions, was under medical care, and needed to miss work from time to time . . ."  *Bailey v. Amsted Indus., Inc.*, 172 F.3d 1041, 1046 (8th Cir. 1999).  Rather, Mack had an obligation to notify The Post that he needed FMLA leave in advance of his particular absences, and to notify The Post as to the expected reason for and duration of that leave.  He admits that he failed to do this (Mack Dep. at 210-14), which is fatal to his FMLA claim.  *See Bailey*, 172 F.3d at 1046 ("An attempt to satisfy the notice requirements by an indication that [the employee] might have to be absent at some unforeseen time in the future satisfies neither [of the FMLA's notice requirements]").

Mack's real argument is not that he actually gave The Post the notice required by the FMLA (he has admitted that he did not).  Mack Dep. at 142-44 and 314-15.  Rather, it is that he

should be excused from doing so because The Post did not comply with the requirement that it notify Mack of his rights to FMLA leave.  Opp. at 11.  Mack cites no legal authority to support this proposition.  But in any event, Mack's claims that The Post effectively had no FMLA policy, had no FMLA forms, and that Smith and Jackson had no knowledge of the FMLA are completely belied by the undisputed factual record.

*First*, it is undisputed that The Post had a written FMLA policy, that Mack received it several times during his employment, and that he understood the policy.  Contrary to his assertion (Opp. at 4 and 11) that he was not told about The Post's FMLA policy until 2006 and that he only learned about the availability of leave when told by a nurse at The Post, Mack candidly, unequivocally admitted that he received a copy of the policy as early as 2001.  Mack Dep. at 142-44 and 314-15; Dep. Ex. 39.  He also signed a form acknowledging receipt of the policy, which expressly states Mack's acknowledgment that he has "read and understand[s]" The Post's FMLA policy, and states his understanding that he is "required to comply" with it.  Dep. Ex. 42.  And he admits that he understood the policy.  Mack Dep. at 144-45.

*Second*, it cannot be disputed that The Post's written FMLA policy provided adequate notice to Mack regarding his rights and obligations under the FMLA.  As Mack explains (Opp. at 11), employers are required to provide "'written notice detailing specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations.'"  Opp. at 11 (quoting *Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 637 (M.D. Pa. 2006)).  The Post's written policy does just that – it advises the employee that "to qualify for [FMLA] leave . . . [he or she] must notify his or her **supervisor and benefits administrator** of the reasons why leave is needed at least 30 days in advance, if the need for leave is foreseeable, or as soon as practicable, if the need for leave is not foreseeable."  Mack

Dep. Ex. 39 at 1 (emphasis in original).  The policy also clearly explains the "consequences of a failure to meet these obligations":  the leave request may be delayed or denied.  *Id.*  Mack's admission that he did not provide the advance notice required by this policy (Mack Dep. at 210-14), thus completely defeats his claim that he complied with The Post's "customary procedural requirements for requesting leave."  Opp. at 11.

*Third*, Mack's claim (Opp. at 10) that The Post did not have FMLA forms available to individuals who needed them is legally irrelevant, since he never requested FMLA leave or gave proper notice of the need for such leave, which would have triggered his obligation to fill out FMLA forms.  In any event, however, his assertion is untrue, as Smith clearly testified:

> Q:      Do you know if the Post has any forms for requesting Family and Medical Leave Act?  [*sic*]
>
> A:      I'm pretty sure they do.
>
> Q:      Well, as we sit here, do you know if the Post has any forms for the Family Medical Leave Act?
>
> A:      I would say yes.

Smith Dep. at 34-35.  Smith also clearly testified that The Post posted information about the FMLA on bulletin boards throughout its facilities.  Smith Dep. at 33-34.  There is thus no issue with *The Post's* compliance with the FMLA's notice requirements.  Rather, it is Mack who failed to comply with those requirements.

*Finally*, Mack's assertions about Smith's and Jackson's alleged lack of knowledge of FMLA policies and procedures is contradicted by the record and, in any event, does not establish that The Post effectively had no FMLA policy.  Smith clearly testified that he had reviewed literature regarding the FMLA, and that in the event an employee requested such information, he knew to contact the benefits office to obtain the information.  Smith Dep. at 33.  Contrary to Mack's assertion (Opp. at 4 and 10) that Smith did not know the meaning of "intermittent leave,"

Smith explained that such leave was leave taken "every now and then." Smith Dep. at 99.

While Smith did not have knowledge of every conceivable detail regarding leave, he knew

enough to refer any employee requesting such leave to The Post's benefits office – precisely as

The Post's written FMLA policy requires. *See* Dep. Ex. 39 at 1 (requiring an employee seeking

leave to contact his or her supervisor and benefits administrator).

    In sum, Mack's claim that The Post failed to provide him adequate notice of his FMLA

rights is flatly contradicted by the record evidence. His admission that, despite having this

information, he never requested FMLA leave, or gave The Post advance notice of the dates and

reasons for his allegedly FMLA-covered leave (*see* Mem. at 14-19) completely defeats his

FMLA interference claim.

2.    <u>Mack Failed to Satisfy the Requirements for Intermittent Leave</u>

    Mack does not dispute that he failed to satisfy the requirements for taking intermittent

FMLA leave and, in particular, that he failed to schedule his foreseeable, intermittent leave in a

manner that was least disruptive to The Post's operations. *See* Mem. at 19-20; *see generally*

Opp. Instead, he suggests that his failure to do so is excusable because he "was never told . . .

his rights and responsibilities as to intermittent leave." Opp. at 11-12. Again, Mack provides no

legal authority to support the proposition that this excuses compliance with the FMLA's clear

requirements, or with The Post's FMLA policy, which Mack acknowledges he received and

understood. But in any event, Mack provides no record cite for this assertion, and the record

evidence refutes it. The Post's written FMLA policy, which Mack admits he received at least

twice while employed at The Post (Mack Dep. at 142-44 and 314-15; Dep. Ex. 42), explicitly

sets forth the requirements for intermittent leave:

> If the employee is seeking intermittent leave that is foreseeable, the employee
> must make a reasonable effort not to unduly disrupt the employer's operation. If

5

> intermittent leave is needed, the employee should consult his or her supervisor to discuss a schedule that suits the needs of both the employee and the employer.

Mack Dep. Ex. 39 at 1. Mack acknowledged that he understood these provisions (Mack Dep. at 276-77), and also admits that he made no effort to comply with them. Mack Dep. at 211 and 216 (acknowledging that Mack failed to notify Smith of scheduled medical treatments in advance); Mack Dep. at 104-06 and 213 (acknowledging that Mack failed to schedule leave so as to be least disruptive to The Post's operations). Since Mack admits that he did not satisfy the requirements for intermittent leave, The Post is entitled to summary judgment on Mack's interference claim.

### 3. The Post Did Not Interfere With Mack's FMLA Rights

Even were he entitled to FMLA leave, The Post established in its Motion (Mem. at 20-21), that it did not interfere with Mack's FMLA rights, because it gave him all the leave that he requested. Mack does not dispute this assertion. *See generally* Opp. Instead, he claims that The Post interfered with his rights by (1) failing to advise him of those rights (Opp. at 11); (2) advising him that he was abusing sick leave (Opp. at 12); and (3) terminating his employment for poor attendance. Opp. at 12. The first contention is completely belied by the record evidence, as discussed above. The second and third contentions misstate the law.

Mack suggests that The Post – and, in particular, Smith – interfered with his exercise of FMLA rights by bringing Mack's poor attendance record to his attention, by advising him that he was abusing sick leave, and by denying him light duty when he requested it. None of these contentions establishes FMLA interference.

First of all, the FMLA does not entitle an employee to light duty. *See* 29 C.F.R. § 825.214(b). The denial of light duty, therefore, cannot possibly form the basis for an FMLA interference claim. *See Johnson v. Houston's Restaurant, Inc*., 167 Fed. Appx. 393, 395 (5th Cir.

6

2006) (stating "if the employee cannot perform the duties of his previous job, the FMLA does not require the employer to provide a job that the employee can perform."). Moreover, Mack's claims that Smith's comments about his abuse of sick leave, and his performance review indicating that his attendance required improvement, interfered with his FMLA rights are without legal basis. He claims that "interfering with the exercise of rights under the FMLA includes discouraging an employee from using sick leave," (Opp. at 12), allegedly quoting 29 C.F.R. § 825.220(b). But that is not what the regulation provides. Instead, it provides that interfering with FMLA rights "includes discouraging an employee from using *such* leave" (29 C.F.R. § 825.220(b) (emphasis added)) – in other words, the regulation stands only for the unremarkable proposition that discouraging an employee from using *FMLA* leave constitutes interference. Smith did not do that here. Because Mack never mentioned FMLA leave, or provided sufficient information such that Smith would know that he needed to be absent on particular days to treat a serious health condition (as contrasted with his knowledge that Mack was occasionally absent to see a dermatologist), his comments about sick leave in no way discouraged Mack from taking such leave. Quite to the contrary, Mack regularly took leave for a wide range of reasons. Mack Dep. at 224-25, 228-31, 233-34, and 240-44; Mack Dep. Exs 27, 29, 30, 32, 33, and 34. Smith's comments were his effort to enforce The Post's absence policies – a perfectly legitimate objective that in no way violates the FMLA. *See* Mem. at 25.

Finally, as The Post predicted (Mem. at 21), Mack suggests that The Post interfered with his FMLA rights by terminating his employment for poor attendance. Opp. at 12. But The Post has established a complete defense to that allegation – that Mack's attendance record was so egregious that it would have terminated his employment even without accounting for those few absences that Mack now claims related to his sarcoidosis. Between January 2005 and his

termination in May 2006, when he worked only weekends and Mondays for The Post, Mack

missed a total of twenty-two shifts for issues that he admits were unrelated to sarcoidosis.  Mack

Dep. at 224-25, 228-31, 233-34, and 239-44; Mack Dep. Exs 22, 23, 27, 29, 30, 33, and 34.

Indeed, none of his 2006 absences related to this condition.  Mack Dep. at 239-44; Mack Dep.

Exs 33 and 34.  Not surprisingly, Corso testified that he would have terminated Mack on the

basis of his 2006 absence record alone, given his intention to restructure the security department

and the high priority given to the safety and security of Post employees.  Corso Decl., ¶ 10.

Under these circumstances, The Post is entitled to judgment on Mack's interference claim.  *See*

*Bailey v. Amsted Indus., Inc.*, 172 F.3d at 1045-46 (holding that employer entitled to judgment

where employee "had sufficient absences not attributable to his alleged serious health condition

to justify his dismissal" even if a few of his absences may have been FMLA covered);

*Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 976-80 (8th Cir. 2005) (employer

not liable for interference with FMLA rights if it would have made the same decision if

employee had not exercised FMLA rights).

### B.  The Post is Entitled to Summary Judgment on Mack's FMLA Retaliation Claim

The Post also demonstrated in its Motion that it was entitled to summary judgment on

Mack's retaliation claim because (1)  Mack cannot establish a prima facie case of FMLA

retaliation because he cannot show that he engaged in protected activity or that there was a

causal connection between any such activity and his termination; and (2) Mack's unreliable

attendance record was a legitimate, non-discriminatory reason for his termination and Mack

cannot show that this reason was a pretext for FMLA retaliation.  In response, Mack's

Opposition contains a single page of argument completely lacking any references to the record.

Mack does not counter or otherwise respond to the majority of The Post's allegations and

conclusions.  He fails to establish a prima facie case of retaliation, fails to dispute The Post's

legitimate reason for terminating his employment, and is unable to show pretext. For each of these reasons, The Post is entitled to summary judgment on Mack's FMLA retaliation claim.

1.    <u>Mack Has Failed to Make Out a Prima Facie Case of Retaliation</u>

Mack cannot establish the elements of an FMLA retaliation claim. Specifically, Mack has failed to refute the evidence that he never requested FMLA leave, which prevents him from showing that he engaged in protected activity under the FMLA. His allegation that he requested light duty at some undefined point (Opp. at 13) does not cure this fatal defect, since the FMLA does not require light duty. *See* 29 C.F.R. § 825.214(b); *Johnson, supra*, 167 Fed. Appx. at 395. Mack does attempt to make out the last element of a prima facie case of retaliation – causation – by relying on the alleged temporal proximity between his termination and his use of sick leave and his complaints to Corso about Smith. Opp. at 13. However, neither establishes the required causal link.

As an initial matter, Mack cannot establish causation because he does not contest that the decision-maker, Corso, was unaware that some of his absences may have been covered by the FMLA, which negates any inference that Mack was terminated because he attempted to exercise his FMLA rights. Indeed, one of the only two cases that Mack cites in support of his retaliation argument confirms this very point. *Brungart v. Bellsouth Telecommunications, Inc.,* 231 F.3d 791, 799 (11th Cir. 2000) held that an employee's termination on the day before commencement of her scheduled FMLA leave did not create a genuine issue of material fact about the causal connection element required to establish a prima facie case of FMLA retaliation because the decision maker was unaware of the employee's protected conduct. *Id*. at 799-80. In that case, the employee had actually requested FMLA leave, however, the decision-maker testified in deposition that he was unaware of her request when he made the decision to terminate her. *Id.* at 794. Here, where Mack never even requested FMLA leave, the case is even stronger for

dismissal.  In any event, because Mack did not even attempt to challenge this fact, he cannot establish the required causation.

Moreover, even had Mack shown that Corso was aware of has alleged FMLA-covered absences, the "temporal proximity" between his termination and (1) his alleged use of FMLA leave and (2) his complaints about Smith do not establish the required causal link.  *First*, there simply is no temporal proximity between Mack's termination and his taking of alleged FMLA leave.  Even had he satisfied the requirements for taking FMLA leave for his sarcoidosis-related absences, it is undisputed that his last such absence was on November 6, 2005 – more than six months before his termination.  A six month gap is too long to establish temporal proximity as a matter of law.  *See Wascura v. City of South Miami*, 257 F.3d 1238, 1247-48 (11th Cir. 2001) (holding three and a half month temporal proximity was insufficient to raise a genuine issue with respect to causation).

*Second*, the allegedly close proximity between Mack's complaints to Corso and his termination does not raise an inference of FMLA retaliation.  Mack's generic complaints regarding The Post's, or Smith's, administration of the sick leave policy do not constitute protected activity under the FMLA, because his complaints did not relate to "a practice unlawful under the FMLA." *See* 29 C.F.R. §825.220(a).  At most, Mack's complaints concern Smith's requirement that he bring in doctor's notes to substantiate his health-related absences.  However, it is well established that an employer is entitled to adopt, and enforce, internal sick leave policies that do not conflict with or somehow diminish the rights guaranteed under the FMLA. *See Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3rd Cir. 2005).

In sum, contrary to Mack's assertion, the temporal proximity between his alleged use of FMLA leave, or his complaints, and the termination does not raise an inference of FMLA

retaliation.  Mack has therefore failed to make out his prima facie case, and The Post is entitled
to judgment as a matter of law on Mack's retaliation claim.

### 2.  Mack Does Not Dispute The Post's Legitimate Business Reason for Its Actions

Mack also fails to contest the evidence that The Post's reason for terminating him was
legitimate and non-discriminatory.  Mack makes no effort to disprove the fact that his overall
attendance record was poor, that he failed to bring in doctor's notes, that he frequently requested
"emergency vacation," and that he was counseled about his "abuse" of sick leave even before he
was diagnosed with sarcoidosis.  *See generally* Opp. at 12-13.  Because Mack does not dispute
these facts, he cannot challenge The Post's legitimate reason for terminating his employment.

### 3.  Mack Has Failed to Establish Pretext

Finally, the allegations that Mack raises in his Opposition do not create issues of fact with
respect to pretext.  In an attempt to show pretext, Mack points to an attendance report for the
period January 2005 through May 2006 which he alleges shows eighteen illness-related
absences.  Opp. at 12.  He couples this with Corso's statement in Mack's termination letter that
Mack was unavailable when called for eighteen shifts to argue that The Post terminated Mack
because he took too much sick leave, rather than for his overall record of poor attendance.  *Id.*
He fails to note that the report also includes multiple non-illness-related absences during this
period.  And it is incomplete, as it does not include several shifts for which Mack does not
dispute being absent for illness and personal reasons during that time period.  Mack Dep. Ex. 31
(absence on November 6, 2005); Jackson Dep. Ex. 2 (absence on January 7, 2006); Mack Dep. at
241-44; Mack Dep. Exs 33 and 34 (absence on April 22, 2006).  In other words, at most, the
report shows that The Post may have made an error (in Mack's favor) in computing the number
of times he was absent from work.  This is insufficient to show pretext; instead, Mack must

11

present evidence that The Post's explanation is false *and* that the real reason was discrimination. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147-48 (2000). So long as The Post honestly terminated Mack's employment for attendance reasons, and not for engaging in protected activity, judgment in The Post's favor is appropriate even if The Post's decision was not free from error. As the court in *Gilmour v. Abbott Laboratories*, 2005 WL 947082, *8 (N.D. Ill. Apr. 11, 2005) reasoned in holding that the plaintiff failed to establish pretext in a similar situation:

> The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered. The court will not sit as a superpersonnel department that reexamines an entity's business decisions and reviews the propriety of the decision. Moreover, it is not sufficient to prove that the reason was doubtful or mistaken. *Pretext does not mean simply a mistake, but instead a lie*, specifically a phony reason for some action.

*Id.* (internal quotations and citations omitted). Mack has provided no evidence suggesting that The Post's stated reason for its actions is false, and therefore he has not established pretext.

In any event, even if it were true, Mack's allegation that he was terminated for taking too much sick leave is immaterial to establishing pretext because, as noted in The Post's original Motion, an employee's misuse of sick leave constitutes a legitimate, non-discriminatory reason for his termination. *See O'Reilly v. Consolidated Edison Co.*, 374 F. Supp. 2d 278, 288-89 (E.D.N.Y. 2005); *Bohman v. County of Woods*, 2004 WL 1563209, at * 5-6 (W.D. Wis.). Thus, what Mack describes as a "pattern of [T]he Post retaliating against Mack for use of sick leave" is just further confirmation that The Post had a legitimate, non-discriminatory reason for terminating him.

### C.  Mack Concedes that He Is Not Entitled to Reinstatement, but Only to Minimal Damages

In its Motion (Mem. at 28-29), The Post established that because his position has been eliminated, Mack is not entitled to reinstatement. Mack does not dispute this assertion. *See*

12

*generally* Opp.  He also does not dispute that he is not entitled to liquidated damages.  *Id.*  Nor does he seriously dispute that he is entitled to only minimal damages – although he suggests that the appropriate amount of damages is $10,000, rather than the $3,300 that The Post estimates.  Opp. at 14 (claiming economic damages of $10,000 per year).

Mack's damages estimate, however, ignores his duty to mitigate damages.  This encompasses not just his obligation to find a better paying job, but also his obligation to find a second, part-time job to the extent that he claims this was his employment status prior to his termination.  (*See* Opp. at 15).  It is undisputed that he made no effort to do so (Mack Dep. at 316-18), and therefore his damages are properly limited as set forth in The Post's Motion.  *See* Mem. at 28-29.

### III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in The Post's Motion, The Post respectfully requests that the Court dismiss all Counts of the Complaint with prejudice and enter judgment in The Post's favor as a matter of law.

Dated:  June 29, 2007                                         Respectfully submitted,


                                                    /s/Jacqueline M. Holmes
                                                    Jacqueline M. Holmes
                                                    JONES DAY
                                                    51 Louisiana Avenue, N.W.
                                                    Washington, D.C.  20001-2113
                                                    (202) 879-3939 (telephone)
                                                    (202) 626-1700 (telecopy)

                                                    Attorneys for Defendant
                                                    The Washington Post

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of June 2007, a true and correct copy of the foregoing Reply Memorandum in Support of Defendant's Motion for Summary Judgment was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


_____/s/ Tonya Michelle Osborne_____